### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE:                                               CASE NUMBER: 19-11462

EDWARD J. LEVIE, IV                                  CHAPTER 7

DEBTOR                                               SECTION "B"

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND ABANDONMENT

GMFS LLC, AS SERVICED BY SPECIALIZED LOAN SERVICING LLC ("Secured Creditor"), a creditor holding a secured claim, represents that:

1.     This Court has jurisdiction over this proceeding and all parties hereto pursuant to 28 U.S.C., Sections 157 and 1334.

2.     On May 30, 2019, Edward J. Levie, IV (the "Debtor") filed with this Court a voluntary petition under Chapter 7 of the Bankruptcy Code.

3.     Secured Creditor is the holder of a Note in the amount of $197,454.00, dated September 23, 2014, executed by the Debtor, and secured by a mortgage, a copy of which is attached hereto, recorded at Instrument No. 1957006, in the records of St. Tammany Parish, Louisiana, affecting the property more fully described in the mortgage filed into the record hereof, and which property bears the municipal address of 1825 JUSTIN DRIVE, COVINGTON, LA 70435. (Exhibit "A")

4.     The Debtor's Statement of Intention provides for reaffirmation of the debt.

5.     As of June 12, 2019, the Debtor's account had a delinquency in the amount of $24,010.67 and the payoff amount was $203,507.81, plus interest accruing thereafter (Exhibit "B").

6.     According to Debtor's Schedule A, the property's value is $185,730.00.

7.    For the foregoing reasons, Secured Creditor requests that the automatic stay be lifted insofar as the property described in paragraph 3 above is affected thereby.

8.    Pursuant to 11 U.S.C. §554, the Trustee should abandon the Property.

9.    Specialized Loan Servicing, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

WHEREFORE, GMFS LLC, AS SERVICED BY SPECIALIZED LOAN SERVICING LLC ("Secured Creditor") prays that the Court enter an order granting relief described as follows:

1.    Termination of the automatic stay imposed by 11 USC §362 and abandonment of the property under 11 U.S.C. §554 as to the estate of the Debtor so as to allow Secured Creditor to enforce any and all rights it has with respect to the property described in paragraph 3 above via state court foreclosure proceedings or otherwise; and

2.    That any order remain in effect regardless of conversion to another Chapter; and/or

3.    For such other and further relief to which Secured Creditor may be entitled.

**THE SUNDMAKER FIRM, L.L.C.**

/s/ *Earl F. Sundmaker, III*
EARL F. SUNDMAKER, III (#24226)
GREGORY J. WALSH (#25921)
ARTHUR S. MANN, III (#9094)
1027 Ninth Street
New Orleans, LA 70115
Telephone:  (504) 568-0515
Fax: (504) 568-0519
trey@sundmakerfirm.com
**Attorneys for Secured Creditor**

MIN# ▓▓▓▓▓▓

| Louisiana | **NOTE** | FHA Case Number |
| LOAN# ▓▓▓▓▓ | | ▓▓▓▓▓▓ |

September 23rd, 2014      BATON ROUGE                        , Louisiana
        [Date]                        [City]

1825 JUSTIN DRIVE COVINGTON, LA 70435

[Property Address]

1. **PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means GMFS, LLC, A LIMITED LIABILITY COMPANY

and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED NINETY SEVEN THOUSAND FOUR HUNDRED FIFTY FOUR AND NO/100
Dollars (U.S. $ 197,454.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND ONE QUARTER
per cent
( 4.250 %) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
    (A) **Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 1st , 2014 . Any principal and interest remaining on the first day of October , 2044 , will be due on that date, which is called the "Maturity Date."
    (B) **Place**
Payment shall be made at 7389 Florida Boulevard, Suite 200A, Baton Rouge, LA 70806
or at such other place as Lender may designate in writing by notice to Borrower.
    (C) **Amount**
Each monthly payment of principal and interest will be in the amount of U.S.$ 971.36 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
    (D) **Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**
    (A) **Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 per cent ( 4.0 %) of the overdue amount of each payment.

    (B) **Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Louisiana Fixed Rate Note -10/95

GCC-3213LA-1 (06/08)     ▓▓▓▓▓     Page 1 of 2



**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses for enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of      25.000               % of sums due under this Note, but not less than U.S. $      0.00                  . Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
EDWARD JOSEPH LEVIE IV                     -Borrower

_____ (Seal)
SENITRA LEVIE                                        -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

*[Sign Original Only]*

'NE VARIETUR' for identification with a mortgage given before me on      September    23rd   , 2014



Notary qualified in   St. Tammany                        Parish, Louisiana

COURTNEY RAE STRICKLIN
NOTARY PUBLIC ID# 85597
NOTARY PUBLIC, STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE

NMLSR ID:              64997
NMLSR (L.O.) ID:   71339 (Stephanie Machado)
Loan Originator:     GMFS LLC

FHA Louisiana Fixed Rate Note -10/95

## ALLONGE TO NOTE

Loan Number ▮▮▮▮▮▮
Borrower:       EDWARD JOSEPH LEVIE IV, SENITRA LEVIE
Loan Amount: 197,454.00
Address:        1825 JUSTIN DRIVE COVINGTON, LA
                70435
Loan Date:      09/23/2014
In Favor of     GMFS, LLC

*Pay to the order of*

_____

Without Recourse
GMFS, LLC

By:
Name:       David Jagneaux
Title:      Vice President, GMFS, LLC

ASSIGNMENT OF MORTGAGE

MIN # ███████████                                     MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Nominee for GMFS, LLC, A Limited Liability Company, its successors and assigns, P.O. Box 2026, Flint, MI 48501-2026 hereby assign and transfer to GMFS LLC, c/o Specialized Loan Servicing LLC, 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129, its successors and assigns, all its rights, title and interest in and to a certain mortgage executed by Edward Joseph Levie IV and Senitra Levie, husband and wife, and bearing the date of the 23rd day of September, 2014 and recorded on the 24th day of September, 2014 in the office of the Recorder of St. Tammany Parish, State of Louisiana as Instrument Number 1957006.

Signed on the _10_ day of _October_, 20 _18_.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., as
Nominee for GMFS, LLC, A Limited
Liability Company, its successors and
assigns

BY: _____
Assistant Secretary

Matthew Philip Mountes

State of Colorado
County of Douglas

The foregoing instrument was acknowledged before me this **OCT 1 0 2018** by
                                                                    (date)
Matthew Philip Mountes
____Assistant Secretary____ of Mortgage Electronic Registration Systems,
Inc.,
        (Name, Title)
a Delaware Corporation, on behalf of the corporation.

_____
(Notary's official Signature)                                    (seal)

_11-22-2021_
(Commission Expiration)
Preparer:  Dean Morris, L.L.C.
           1505 North 19th Street
           Monroe, LA 71201



| KAITLIN SWANSON |
| NOTARY PUBLIC |
| STATE OF COLORADO |
| NOTARY ID 20174048226 |
| MY COMMISSION EXPIRES 1/22/2021 |

STATE OF LOUISIANA PARISH OF ST. TAMMANY
HEREBY CERTIFY that the above is a true and
correct copy of the original as recorded at
instrument #2132262c of the original
records. Given under my hand and seal of office
this the 1 day of Oct 2018
by Clerk and Ex-Officio Recorder
Jaynie Rollins, Deputy Clerk

St. Tammany Parish 2209
Instrmnt #: 1957006
Registry #: 2333472 cbj
09/24/2014 10:00:00 AM
MB X CB    MI    UCC

---

**State of Louisiana** — [Space Above This Line For Recording Data] — FHA Case Number

LOAN#

PARCEL TAX ID# 106-907-4154

MIN

## MORTGAGE



THIS MORTGAGE ("Security Instrument") is given on September 23rd 2013 , before me, the undersigned Notary , and in the presence of the undersigned witnesses, by EDWARD JOSEPH LEVIE IV AND SENITRA LEVIE , HUSBAND AND WIFE

("Borrower"), a person(s) of the full majority and resident(s) of ST. TAMMANY Parish, Louisiana, whose permanent mailing address is the Property Address stated below. This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee under this Security Instrument. The tax identification number of MERS is 54-1927784 . MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. BOX 2026, Flint, MI Borrower declared and acknowledged that Borrower owes GMFS, LLC, A LIMITED LIABILITY COMPANY

a corporation organized and existing under the laws of THE STATE OF DELAWARE , and whose permanent mailing address is 7389 Florida Boulevard, Suite 200A, Baton Rouge, LA 70806 ("Lender"), the principal sum of ONE HUNDRED NINETY SEVEN THOUSAND FOUR HUNDRED FIFTY FOUR AND NO/100

Dollars (U.S. $ 197,454.00 ),
This debt is evidenced by Borrower's note of even date paraphed "Ne Varietur" by me, Notary, for identification herewith and delivered to Lender ("Note"). The Note provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 1st, 2044 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and attorneys' fees, together with all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced LOUISIANA - Single Family - FHA SECURITY INSTRUMENT - 1/96

GCC - m1500-1LA (11/11)                    Page 1 of 8



*l*

St Tammany Parish Clerk of Court Inst#1957006

under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) the following described property located in ST. TAMMANY Parish, Louisiana:
SEE ATTACHED FOR LEGAL DESCRIPTION

which has the address of 1825 JUSTIN DRIVE , COVINGTON                                [Street, City],
Louisiana    70435              ("Property Address");
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  Monthly Payments of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that

OCC - m1500-2LA (11/12)                    Page 2 of 8



Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for Items (a), (b) and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any    delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the

GCC - 1590-3LA (06/10)                                    Page 3 of 8

reduction of the Indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding Indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  Fees. Lender may collect fees and charges authorized by the Secretary.

9.  Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

GCC - 1590-4LA (08/10)                     Page 4 of 8



(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 30 DAYS     from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 30 DAYS    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note    conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

GCC - 1590-5LA (06/10)           Page 5 of 6



Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the three days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; and (c) all other benefits provided under all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. § 9:3504(D)(6) and La. R.S. § 9:5555.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

GCC - 1500-6LA (11/13)                                                      Page 6 of 6

19. **Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the Parish of Orleans for the purpose of canceling this Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records, Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

20. **Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

21. **Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. § 6:830.

22. **Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to paragraph 7. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances pursuant to paragraph 7, exceed one hundred fifty percent (150%) of the original amount of the indebtedness set forth in the Note.

23. **Keeper.** Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of fieri facias, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. §§ 9:5136, et. seq. Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

24. **Late Charges.** Should Borrower fail to pay any installment of the principal and interest under the Note within    15    days of when due, Borrower agrees to pay Lender a late charge in an amount equal to 4.000

25. **Marital Status.** The marital status of Borrower is: MARRIED

26. **Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above. It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. § 9:5390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance. "Real Property" means "immovable property" as that term is used in the Louisiana Civil Code. "Condemnation" includes "expropriation" as that term is used in Louisiana law.

27. **Property Includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

28. **Full Ownership.** Borrower

29. **Modification of Section 13 of this Security Instrument.** Section 13 of this Security Instrument is hereby modified to the following extent. Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable). However, to the extent that the Property is community owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with

GCC - 1590-7LA (11/13)                    Page 7 of 8

the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code article 2347), without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 12 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

30.  **Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

31.  **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

|   |   |   |   |
|---|---|---|---|
| ☐ | Condominium Rider | ☐ | Growing Equity Rider |
| ☐ | Graduated Payment Rider | ☒ | Planned Unit Development Rider |
| ☒ | Other(s) [specify] | | |
| | EXHIBIT A | | |

THUS DONE, AND PASSED, on this 23rd     day of     September     , 2014    in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereunto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

Witnesses (as to all signatures):

Print Name: WAYNE SEKIFF

Print Name: SANDY BATTAGLIA

EDWARD JOSEPH LEVIE IV                    (Seal)
                                          -Borrower

SENITRA LEVIE                             (Seal)
                                          -Borrower

                                          _____ (Seal)
                                          -Borrower

April Curtis
GMFS, LLC
7389 Florida Boulevard
Suite 200A
Baton Rouge, LA 70806

                                          _____ (Seal)
                                          -Borrower

NOTARY PUBLIC:

Print Name:
COURTNEY RAE STRICKLIN
NOTARY PUBLIC ID# 85597
NOTARY PUBLIC, STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE

NMLSR ID: 64997
NMLSR (L.O.) ID: 71339 (Seal)
Loan Originator: GMFS LLC

Record and Return to:
GMFS LLC
ATTN: Linda Templet
7389 Florida Blvd., STE 200A
Baton Rouge, LA 70806

GCC - 1690-8LA (11/13)                    Page 8 of 8

St Tammany Parish Clerk of Court   Inst#1957006   Page 9 of 12

# PLANNED UNIT DEVELOPMENT RIDER

LOAN 

FHA Case Number

THIS PLANNED UNIT DEVELOPMENT RIDER is made this  23rd                        day of
September           ,  2014      , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (Security Instrument) of the same date, given by the undersigned
(Borrower) to secure Borrower's Note (Note) to      GMFS, LLC, A LIMITED LIABILITY COMPANY

(Lender) of the same date and covering the Property described in the Security Instrument and located at:
1825 JUSTIN DRIVE COVINGTON, LA 70435

[Property Address]

The Property Address is a part of a planned unit development (PUD) known as:
OAK ALLEY

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities),
acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or
"blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter
erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in
the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included
within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth
of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under
Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied
to the extent that the required coverage is provided by the Owners Association policy.  Borrower shall give
Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard.

PLANNED UNIT DEVELOPMENT RIDER - Single Family - FHA Uniform Instrument

GCC - 159019-1 (08/10)                              Page 1 of 2

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
EDWARD JOSEPH LEVIE IV                -Borrower

_____ (Seal)
SENITRA LEVIE                        -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

*[Sign Original Only]*

GCC - 169019-2 (04/10)        Page 2 of 2



St Tammany Parish Clerk of Court Inst#1957006 Page 41 of 12

## TITLE INSURANCE IDENTIFICATION RIDER

LOAN NO 

**THIS TITLE INSURANCE IDENTIFICATION RIDER** is made on September 23, 2014, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Second Mortgage, Future Advance Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the Borrower(s) (the "Borrower") to secure Borrower's Note or Loan Agreement to GMFS, LLC (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1825 JUSTIN DRIVE, COVINGTON, LA 70435.

| | |
|---|---|
| **Name of Title Insurance Producer:** | DSLD Title, LLC |
| **Address:** | 13348 Coursey Blvd., Suite A, Baton Rouge, LA 70816 |
| **License Number:** | 480391 |
| **Name of Title Insurance Underwriter:** | Old Republic National Title Insurance |
| **Name of Attorney:** | Don Stelly |
| **Bar Number of Licensed Attorney:** | 26524 |

**TITLE INSURANCE IDENTIFICATION RIDER - LA**

## EXHIBIT "A"

## LEGAL DESCRIPTION

**ONE (1) CERTAIN LOT OR PARCEL OF GROUND,** together with all the buildings and improvements thereon, situated in the Parish of ST TAMMANY, State of Louisiana, in that subdivision known as **OAK ALLEY, PHASE II B,** and being designated on the official plan of said subdivision, on file and of record in the office of the Clerk and Recorder of said Parish and State, as **LOT NUMBER ONE HUNDRED ONE(101),** said subdivision, said lot having such size, shape and dimensions and being subject to such servitudes as are shown on said map.

Municipal Address: 1825 JUSTIN DRIVE, COVINGTON, LA 70435

Legal Description                                                                                    2014080528/12

| Creditor: | Specialized Loan Servicing LLC |
|---|---|
| Debtor: | Edward J Levie IV |
| Case No.: | 19-11462 |
| Loan No.: | xxxxxx8919 |
| Our File No.: | 4128-N-6553 |
| Collateral: | 1825 JUSTIN DRIVE COVINGTON, LA 70435 |

**PAYMENTS RECEIVED**

Loan Status as of: 6/17/2019
Initial Due Date: 1/1/2017

| Date Received | Amount Received | Due Date | Amount Due | Late Charges/ NSF/Other | Paid Over/Short | Description | PCN Status |
|---|---|---|---|---|---|---|---|
| 1/26/2017 | $ - | 1/1/2017 | $ 1,381.41 | $ - | $ (1,381.41) | Payment Accrued | |
| 1/26/2017 | $ 1,400.00 | | | $ - | 1,400.00 | Funds Received | |
| | $ - | | | $ (18.59) | (18.59) | Late Fees | |
| 2/1/2017 | $ - | 2/1/2017 | $ 1,381.41 | $ - | (1,381.41) | Payment Accrued | |
| 3/1/2017 | $ - | 3/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 3/13/2017 | $ 1,400.00 | | | $ - | 1,400.00 | Funds Received | |
| 3/13/2017 | $ - | | | $ (18.59) | (18.59) | Late Fees | |
| 4/1/2017 | $ - | 4/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 4/17/2017 | $ 1,450.00 | | | $ - | 1,450.00 | Funds Received | |
| 4/17/2017 | $ - | | | $ (76.89) | (76.89) | Late Fees | |
| 5/1/2017 | $ - | 5/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 5/17/2017 | $ 1,376.00 | | | $ - | 1,376.00 | Funds Received | |
| 5/17/2017 | $ - | | | $ (2.89) | (2.89) | Late Fees | |
| 6/1/2017 | $ - | 6/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 6/19/2017 | $ 1,375.00 | | | $ - | 1,375.00 | Funds Received | |
| 6/19/2017 | $ - | | | $ (1.89) | (1.89) | Late Fees | |
| 7/1/2017 | $ - | 7/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 7/20/2017 | $ 1,375.00 | | | $ - | 1,375.00 | Funds Received | |
| 7/20/2017 | $ - | | | $ (1.89) | (1.89) | Late Fees | |
| 8/1/2017 | $ - | 8/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 8/31/2017 | $ 1,378.11 | | | $ - | 1,378.11 | Funds Received | |
| 8/31/2017 | $ - | | | $ (5.00) | (5.00) | Fee Paid | |
| | $ - | 9/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| | $ - | 10/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 10/12/2017 | $ 1,375.00 | | | $ - | 1,375.00 | Funds Received | |
| 10/12/2017 | $ - | | | $ (1.89) | (1.89) | Late Fees | |
| | $ - | 11/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 11/8/2017 | $ 1,375.00 | | | $ - | 1,375.00 | Funds Received | |
| 11/8/2017 | $ - | | | $ (1.89) | (1.89) | Late Fees | |
| | $ - | 12/1/2017 | $ 1,373.11 | $ - | (1,373.11) | Payment Accrued | |
| 12/14/2017 | $ 2,755.00 | | | $ - | 2,755.00 | Funds Received | |
| 12/14/2017 | $ - | | | $ (5.00) | (5.00) | Fee Paid | |
| 12/27/2017 | $ - | | | $ (3.78) | (3.78) | Late Fees | |

| Date | Amount | | Accrual Date | Amount Due | Adjustment | Balance | Description |
|---|---|---|---|---|---|---|---|
| | $ - | $ | 1/1/2018 | $ 1,373.11 | $ - | $ (1,373.11) | Payment Accrued |
| | $ - | $ | 2/1/2018 | $ 1,373.11 | $ - | $ (1,373.11) | Payment Accrued |
| 2/6/2018 | $ 1,375.00 | $ | | | $ - | $ 1,375.00 | Funds Received |
| 2/6/2018 | $ - | $ | | | $ (1.89) | $ (1.89) | Late Fees |
| | $ - | $ | 3/1/2018 | $ 1,378.78 | $ - | $ (1,378.78) | Payment Accrued |
| | $ - | $ | 4/1/2018 | $ 1,375.00 | $ - | $ (1,375.00) | Payment Accrued |
| 4/3/2018 | $ 1,375.00 | $ | | | $ - | $ 1,375.00 | Funds Received |
| 4/20/2018 | $ 1,395.00 | $ | | | $ - | $ 1,395.00 | Funds Received |
| 4/20/2018 | $ - | $ | | | $ (20.00) | $ (20.00) | Fee Paid |
| | $ - | $ | 5/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| | $ - | $ | 6/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| 6/11/2018 | $ 1,375.00 | $ | | | $ - | $ 1,375.00 | Funds Received |
| | $ - | $ | 7/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| 7/10/2018 | $ 1,375.00 | $ | | | $ - | $ 1,375.00 | Funds Received |
| | $ - | $ | 8/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| | $ - | $ | 9/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| | $ - | $ | 10/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| | $ - | $ | 11/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| | $ - | $ | 12/1/2018 | $ 1,385.94 | $ - | $ (1,385.94) | Payment Accrued |
| | $ - | $ | 1/1/2019 | $ 1,386.07 | $ - | $ (1,386.07) | Payment Accrued |
| | $ - | $ | 2/1/2019 | $ 1,378.67 | $ - | $ (1,378.67) | Payment Accrued |
| | $ - | $ | 3/1/2019 | $ 1,378.67 | $ - | $ (1,378.67) | Payment Accrued |
| | $ - | $ | 4/1/2019 | $ 1,378.67 | $ - | $ (1,378.67) | Payment Accrued |
| | $ - | $ | 5/1/2019 | $ 1,378.67 | $ - | $ (1,378.67) | Payment Accrued |
| | $ - | $ | 6/1/2019 | $ 1,378.67 | $ - | $ (1,378.67) | Payment Accrued |
| Total: | $ 22,154.11 | $ | | $ 41,360.86 | $ (160.19) | $ (19,366.94) | |

| Delinquent Payments | | Days Delinquent: | 412 | |
|---|---|---|---|---|
| Month Due | P&I Due | Escrow Due | Skip Due | Total Due |
| 5/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 6/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 7/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 8/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 9/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 10/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 11/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 12/1/2018 | $ 971.36 | $ 414.58 | $ - | $ 1,385.94 |
| 1/1/2019 | $ 971.36 | $ 414.71 | $ - | $ 1,386.07 |
| 2/1/2019 | $ 971.36 | $ 407.31 | $ - | $ 1,378.67 |
| 3/1/2019 | $ 971.36 | $ 407.31 | $ - | $ 1,378.67 |

| 4/1/2019 | $ | 971.36 | $ | 407.31 | $ | - | $ | 1,378.67 |
|----------|---|--------|---|--------|---|---|---|-----------|
| 5/1/2019 | $ | 971.36 | $ | 407.31 | $ | - | $ | 1,378.67 |
| 6/1/2019 | $ | 971.36 | $ | 407.31 | $ | - | $ | 1,378.67 |
| Delinquency | | | | | | | $ | 19,366.94 |
| Less Suspense | | | | | | | $ | - |
| Total Delinquency | | | | | | | $ | 19,366.94 |